## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALFREDO ROMERO,** | § | |
| **TDCJ No. 1054039,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-15-CA-868-FB (HJB)** |
| | § | |
| **RISSIE OWENS,** | § | |
| **FRED SOLIS,** | § | |
| **ANTHONY RAMIREZ, and** | § | |
| **CHUCK SPEIER,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The matters before the Court are (1) plaintiff's motion for appointment of counsel, filed January 27, 2016 (ECF no. 13), (2) plaintiff's motion for discovery, filed January 27, 2016 (ECF no. 14), (3) plaintiff's motion for continuance, filed January 27, 2016 (ECF no. 15), and (4) defendants' motion to dismiss, filed December 7, 2015 (ECF no. 9).  For the reasons discussed below, all of plaintiff's motions will be denied and defendants' motion will be granted.

Background

Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 on October 5, 2015 (ECF nos. 1 & 2), naming as defendants four supervisory state parole officials.  He alleges his constitutional rights to equal protection of the laws and to freedom from cruel and unusual punishment have been violated by (1) the denial of his requests for parole on multiple occasions and (2) his exclusion from eligibility for participation in TDCJ educational programs - both because he

has an ICE detainer lodged against him.  In his memorandum in support of his complaint, plaintiff requests injunctive relief as well as monetary damages from each defendant (ECF no. 2, at pp. 11-12)..

Defendants' motion to dismiss argues (1) plaintiff possesses no constitutional interest in, or a state statutory right to, release on parole; (2) state statutes which exclude plaintiff from eligibility for release on parole do not violate equal protection principles or the eighth amendment's prohibition on cruel and unusual punishment; (3) the named defendants have no legal authority over the Windham School, which operates educational programs within facilities of the Texas Department of Criminal Justice's Institutional Division; (4) plaintiff has failed to allege any specific facts showing any of the named defendants were personally involved in, or possess personal knowledge of, any of the matters about which plaintiff complains in his pleadings in this lawsuit; and (5) defendants are entitled to relief from plaintiff's requests for monetary damages under the Eleventh Amendment, the doctrine of qualified immunity, and well-settled principle that supervisory official may not be held personally liable for damages under § 1983 (ECF no. 9).

Standard of Review Under Rule 12(b)(6), FED.R.CIV.P.

The pleading standard set forth in Rule 8(a)(2), FED.R.CIV.P., (which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief") does not require detailed factual allegations but it does demand more than a conclusory allegation from the plaintiff that he or she was unlawfully harmed by the defendant.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. at 678; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th

Cir. 2014).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678; *Whitley v. Hanna*,  726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555; *see also Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d at 360.  A pleading which offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it renders "naked assertions" devoid of further factual enhancement.  *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557.

Section 1983 Generally

Title 42 U.S.C. Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of federal statutory and constitutional rights.  *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 1789 (2014); *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *Hernandez ex rel. Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 879-80 (5th Cir. 2004).  There are two essential elements to a Section 1983 action: (1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014); *Romano v. Greenstein*, 721 F.3d 373,

377 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d 496, 517 (5th Cir. 2013); *see also Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (holding that constitutional claim of discrimination requires proof of purposeful discrimination; disparate impact is insufficient; and absence of discriminatory purpose precludes constitutional violation).

In order to state a cause of action under Section 1983, a plaintiff must allege facts establishing that an otherwise private defendant acted "under color" of state law.  *Rundus v. City of Dallas, Texas*, 634 F.3d 309, 312 (5th Cir. 2011) (to show there is state action by an otherwise private entity, plaintiff must show either (1) private entity's action represents an official city policy or custom or (2) defendant's action in enacting and enforcing restriction is "fairly attributable" to the city), *cert. denied*, 132 S. Ct. 107 (2011); *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (holding no §1983 liability could exist with regard to private defendants absent allegations that non-governmental defendants acted in concert with governmental entity to deprive plaintiff of his or her rights).  Stated somewhat differently, a claim for relief under 42 U.S.C. § 1983 must contain two elements: (1) that plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted under color of state law.  *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2995 (2011); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (a person acts under color of state law if he or she misuses "power" possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law).  Thus, not all actions of a state official are necessarily taken under color of state law; where the actor's motivation was personal and the actor did not invoke or use any official authority, there is an absence of a showing of action "under color of state law."

*Bryant v. Military Department of Mississippi*, 597 F.3d 678, 686-87 (5th Cir. 2010), *cert. denied*, 562 U.S. 893 (2010).

Plaintiff alleges the defendants failed to comply with a variety of state statutes and code provisions.  However, absent some showing that the defendants violated plaintiff's federal constitutional rights, complaints about the violation of state statutes or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983.  *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 352 (5th Cir. 2012) ("[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution."); *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) (holding alleged violations of TDCJ procedural rules regarding notice and right to call witnesses and present documentary evidence at disciplinary hearing did not present arguable basis to support due process claim); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding prison official's failure to follow prison's own policies, procedures, and regulations does not constitute violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) (holding a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process), *cert. denied*, 516 U.S. 860 (1995); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (holding that state's failure to follow its own procedural regulations does not constitute violation of due process "if constitutional minima are nevertheless met"); *Murray v. Mississippi Department of Corrections,* 911 F.2d 1167, 1168 (5th Cir. 1990) (holding alleged violations of state statute did not give rise to federal constitutional claims), *cert. denied*, 498 U.S. 1050 (1991); *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a

violation of due process, because 'constitutional minima may nevertheless have been met.'"); *Brown v. Texas A&M University*, 804 F.2d 327, 335 (5th Cir. 1986) (holding state agency's violations of its own internal regulations did not establish due process violation or otherwise give rise to constitutional claim).  Therefore, insofar as plaintiff alleges merely that the defendants failed to comply with state jail rules and regulations and state statutes, those allegations, standing alone, do not provide a basis for recovery or for a finding that plaintiff has stated a claim for relief under 42 U.S.C. § 1983.

Finally, mere negligence by a state official does not give rise to § 1983 liability. *Daniels v. Williams*, 474 U.S. 327, 332-35 (1986).  A showing of merely negligent conduct by an official is insufficient to overcome the defense of qualified immunity.  *Whitley v. Hanna*, 726 F.3d at 643 ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 410 (5th Cir. 2007 (negligence will not support the denial of qualified immunity); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (holding the same).  Negligent failure to supervise or train does not satisfy the "deliberate indifference" standard and will likewise not support a § 1983 cause of action against a municipal entity. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (holding that only showing of deliberate indifference by municipal policy makers will support Section 1983 liability based on failure-to-train claim); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 170 (5th Cir. 2010) ("'Unintentionally negligent oversight' does not satisfy the deliberate indifference standard."), *cert. denied*, 131 S. Ct. 3059 (2011); *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (holding the same), *cert. denied*, 563 U.S. 935 (2011).

Qualified Immunity

As public officials performing discretionary roles, defendants are entitled to the benefits of the doctrine of qualified immunity.  Even when a state official or other person acting under color of state law engages in constitutionally impermissible conduct, the defendant may nevertheless be shielded from liability for civil damages if the defendant's actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 131 S. Ct. 2074, 2085 (2011); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

The defense of qualified immunity first recognized in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), is neither a complete barrier to recovery nor a true affirmative defense.  Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties.  A party seeking damages from an official asserting *Harlow* qualified immunity bears the burden of overcoming that defense.  *McCreary v. Richardson*, 738 F.3d at 655;  *Wyatt v. Fletcher*, 718 F.3d 496, 802 (5t5h Cir. 2013); *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013). Once a government official or employee has asserted qualified immunity and established that the allegedly wrongful acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does not bar recovery.  The Fifth Circuit has authorized the dismissal as frivolous of civil rights claims which fail to establish a violation of the plaintiff's "clearly established" federal rights. *See Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (affirming summary dismissal of complaint against state prison officials as

7

frivolous on qualified immunity grounds).  An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.  *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998); *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which reasonable person would have known), *cert. denied,* 558 U.S. 1148 (2010); *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 418 (5th Cir. 2008) (holding the same); *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (holding the same).

An official acts within the scope of his authority if he discharges the duties generally assigned to him.  *Tamez v. City of San Marcos, Texas*, 118 F.3d at 1091-92.  For executive officers in general, qualified immunity is the norm.  *Malley v. Briggs*, 475 U.S. 335, 340 (1986); *Harlow v. Fitzgerald*, 457 U.S. at 807.

> [Q]ualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S., at 206, 121 S. Ct. 2151.  For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. *Forsyth,* 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).
>
> Officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242.  Section 242 makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution.  In *United States v. Lanier,* 520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997), we held that the defendant was entitled to "fair warning" that his conduct deprived his

8

victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under § 1983.

*Hope v. Pelzer*, 536 U.S. at 739-40.

The Supreme Court has admonished district courts that *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The Supreme Court and the United States Court of Appeals for the Fifth Circuit have also strongly encouraged district courts to consider §1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery.  *See Siegert v. Gilley*, 500 U.S. 226, 231-302 (1991) (holding that discovery should not be allowed until determination is made that plaintiff's clearly established constitutional rights were violated); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (recognizing one purpose of qualified immunity is to protect public officials from broad-ranging discovery that can be peculiarly disruptive of effective government); *Mitchell v. Forsyth*, 472 U.S. at 526-27 (holding denials of qualified immunity are subject to immediate appellate review because protection afforded by qualified immunity is one from suit, not just liability); *Harlow v. Fitzgerald*, 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed.").

Once a defendant raises qualified immunity, the judge must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were objectively reasonable in light of the law that was clearly established at the time the contested action

occurred; until this threshold is resolved, discovery should not be allowed. *Siegert v. Gilley*, 500 U.S. at 232-33; *Harlow v. Fitzgerald*, 457 U.S. at 818.  Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct violated a plaintiff's "clearly established" constitutionally-protected right. *Siegert v. Gilley*, 500 U.S. at 231; *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006).  If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was "objectively reasonable" under legal principles as they existed at the time of the defendant's acts or omissions.  *See Wyatt v. Fletcher*, 718 F.3d at 502 (noting that constitutional right is clearly established only if its contours are sufficiently cleat that a reasonable official would understand that what he is doing violates that right); *Easter v. Powell*, 467 F.3d at 462 ("First, we determine whether, under current constitutional standards, the plaintiff has alleged a violation of a clearly established constitutional right.  If so, we then decide if the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident."); *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1992) ("The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation -- we look to the clearly established law at that time.").  In summary, the two-pronged qualified immunity test inquires first whether the defendant's conduct violated the plaintiff's clearly established constitutional rights and, second, whether the defendant's conduct was nonetheless objectively reasonable in light of legal principles as they existed at that time.  *Haverda v. Hays County*, 723 F.3d 586, 598 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d at 502; *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).

The Unites States Court of Appeals for the Fifth Circuit Court has also repeatedly encouraged the district courts to (1) require highly fact-specific pleading by a plaintiff in a §1983 lawsuit who attempts to overcome a plea of *Harlow* qualified immunity, *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Todd v. Hawk*, 72 F.3d at 446; *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995), and (2) permit limited discovery pending disposition of the qualified immunity issue only in those extraordinary situations in which the specific facts contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified immunity.  *Reyes v. Sazan*, 168 F.3d at 161.  This heightened pleading requirement applies to *pro se* litigants.  *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 621 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

"[P]laintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense." *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Reyes v. Sazan*, 168 F.3d at 161; *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *James v. Sadler*, 909 F.2d 834, 838 (5th Cir. 1990) (holding questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery).  A complaint which raises the likely issue of immunity cannot be cast in broad, vague, general, indefinite, or conclusory terms, but must include detailed facts supporting the contention that the plea of immunity cannot be sustained. *Gobert v. Caldwell*, 463 F.3d 339, 348 n.27 (5th Cir. 2006); *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997).  Discovery related to the applicability of qualified immunity is appropriate only when factual issues exist as to the applicability of qualified immunity.  *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991).

In this case, plaintiff has failed to allege any facts sufficient to overcome the defense available to defendants through the doctrine of qualified immunity. Thus, plaintiff is not entitled to direct discovery requests to the defendants before responding to defendants' motion to dismiss. Nor is plaintiff entitled to a continuance to conduct discovery before responding to defendants' motion to dismiss.

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, as explained above, the Supreme Court and the United States Court of Appeals for the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Ashcroft v. Al-Kidd*, 131 S. Ct. at 2090; *Anderson v. Creighton*, 483 U.S. at 646 n.6; *Harlow v. Fitzgerald*, 457 U.S. at 818; *Wyatt v. Fletcher*, 718 F.3d at 502; *Easter v. Powell*, 467 F.3d at 462. If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *See Lewis v. University of Texas Medical Branch*, 665 F.3d 625, 631 (5th Cir. 2011) (noting that fact that reasonable minds could disagree on the propriety of the plaintiff's termination is insufficient to defeat a public officer's qualified immunity defense); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 407-08 (5th Cir. 2007) (holding that if reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."). Whether the conduct of which the plaintiff complains violated clearly established law

is essentially a legal question.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In a § 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under federal law.  *Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful act or omission generally turns on the "objective legal reasonableness" of the act or omission assessed in the light of the legal rules that were "clearly established" at the time it was taken.  *Anderson v. Creighton*, 483 U.S. at 639.  For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. at 640.  While there need not have been a specific ruling squarely in point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions. *Kinney v. Weaver*, 367 F.3d 337, 372 (5th Cir.), *cert. denied*, 543 U.S. 872 (2004); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.), *cert. denied*, 525 U.S. 872 (1998).  The United States Court of Appeals for the Fifth Circuit has directed courts to initially examine Supreme Court and Fifth Circuit precedent, *i.e.,* "controlling authority," in the course of determining whether a legal principle is "clearly established"; the law of other Circuits may be considered when "a consensus of cases of persuasive authority [is] such that a reasonable officer could not have believed that his actions were lawful." *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir.) (*en banc*), *cert. denied*, 537 U.S. 1232 (2002).

The second step in the qualified immunity analysis is the determination of the objective reasonableness of the defendant's act or omission.  Objective reasonableness is assessed in light of

the legal rules clearly established at the time of the incident; an officer's conduct is not objectively reasonable when all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on. *See Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (recognizing qualified immunity in excessive force case required not only examination of clearly established Fourth Amendment standards but also whether a right to remain free the degree of force used in a given situation was clear to a reasonable officer at the scene). The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Malley v. Briggs*, 475 U.S. 335, 343 (1986). In addition, merely negligent conduct on the part of a government official cannot meet the rather stringent standard for liability under Title 42 U.S.C. §1983. *Daniels v. Williams*, 474 U.S. 326, 331-34 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Plaintiff argues in his recent motion for continuance the defendants are not entitled to qualified immunity because he has sought  injunctive relief (ECF no. 15, at p. 14).[1] This argument is without merit. Plaintiff's memorandum in support of his complaint requests monetary damages in the amount of $250,000 from each public official named as a defendant in his original complaint. (ECF no. 2, at pp. 11-12). For the reasons discussed below, none of plaintiff's allegations about the denial of his requests for release on parole are sufficient to overcome the protection from suit afforded by the doctrine of qualified immunity to which all of the named defendants are entitled.

---

[1] Plaintiff's filing styled "motion for continuance" (ECF no. 15) is, in fact, a section-by-section set of arguments attempting to controvert the legal and factual arguments presented in defendants' motion to dismiss.

Equal Protection:  Parole Release

The United States Court of Appeals for the Fifth Circuit has repeatedly held that Texas prisoners do not possess a constitutionally protected liberty interest in obtaining release on parole. *See Toney v. Owens*, 779 F.3d 330, 341-42 (5th Cir. 2015) ("[W]e have consistently held that 'Texas prisoners ... cannot mount a challenge against *any* state parole review procedure on procedural ... Due Process grounds.' "); *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. ) ("because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."), *cert. denied*, 522 U.S. 995 (1997); *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) ("The applicable Texas parole statutes have been held, however, to confer no such liberty interest."), *cert. denied*, 516 U.S. 1059 (1996).  Plaintiff has no constitutionally protected interest in obtaining his release on parole.  The denial to plaintiff of release on parole does not implicate any fundamental constitutional right.

Plaintiff argues, however, that he has a constitutionally protected right under equal protection principles to be treated the same as other TDCJ prisoners who do not have ICE detainers lodged against them with regard to (1) parole consideration and (2) participation in educational programs offered to TDCJ inmates through the Windham School.  To establish an equal protection claim, plaintiff "must show that two or more classifications of similarly situated persons were treated differently."  *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir.), *cert. denied*, 133 S. Ct. 561 (2012).  Strict scrutiny is appropriate only where a government classification implicates a suspect class or a fundamental right.  *Id.*  Otherwise, rational basis review applies and this Court need only determine whether the classification is rationally related to a legitimate governmental

interest.  *Id.*  As explained above, plaintiff possesses no fundamental constitutional right to release from custody on parole prior to the conclusion of his sentence.

Alien prisoners with ICE detainers, such as plaintiff, cannot show that exclusion from parole consideration or participation in rehabilitation or educational programs establishes that alien prisoners, as am identifiable group, are being treated differently from other similarly situated prisoners who are not aliens.  *Id.*  This is because the state statutes and regulations, on their face, classify prisoners not as aliens or non-aliens but, rather as those who have ICE detainers against them and those who do not.  *Id.* at 196.  The classification of prisoners based upon whether they have an ICE detainer lodged against them does not implicate a suspect classification.  *Id.*

Insofar as plaintiff complains that he has been denied release on parole based upon his ICE detainer, plaintiff's complaint fails to state a cognizable claim.  Applying a rational basis analysis, the determination that ICE detainees are ineligible to participate in prerelease halfway house confinement is rationally related to preventing those detainees from fleeing during the community-based portion of those programs.  *Id.*  The same analysis applies with equal force to plaintiff's complaint that he has been denied release from custody on parole prior to the conclusion of his sentence.  Concern for the possibility ICE detainees released on parole might seek to flee the jurisdiction before their deportation by federal authorities could be arranged rationally justifies the State of Texas' decision to deny parole release to ICE detainees.  *Id.*

Eighth Amendment and Denial of Parole

Any psychological distress plaintiff may have suffered as a result of his repeated denials of release on parole, even if such denials were arbitrary or capricious, does not equate with the cruel and unusual punishment prohibited under the Eighth Amendment.  *Cook v. Whiteside*, 505 F.2d 32,

34 (5th Cir. 1974).   As explained above, as a Texas prisoner, plaintiff has no constitutionally protected interest in obtaining his release on parole prior to the conclusion of his sentence.

Lack of Personal Involvement in Alleged Denial of Educational Opportunity

To the extent that plaintiff complains that he has been denied the opportunity to participate in educational programs offered to some TDCJ inmates by the Windham School, plaintiff has failed to allege any facts sufficient to overcome the defense of qualified immunity showing that any of the four named defendants has ever held any position which authorized them to exercise legal power over the operation of the Windham School.   As defendants correctly point out in their motion to dismiss, the Windham School is a creature of state statute, i.e., Texas Education Code § 19.002, which is separate and legally distinct from the Texas Board of Pardons and Paroles of which the defendants are officials.   Plaintiff has alleged no facts showing any of the named defendants has any legal authority over the Windham School and this Court's independent research has revealed none.

Any complaint plaintiff has with the manner in which the Windham School has operated its programs within the TDCJ must be directed toward that agency or its officials, not to the persons named as defendants in this lawsuit.   In fact, plaintiff recently filed a separate lawsuit in this Court, i.e., cause no. SA-15-CA-874-XR, in which he named a Windham School official as a defendant, asserted similar claims to those raised in this lawsuit, and sought relief similar to that urged in this lawsuit.   Plaintiff must pursue his equal protection claims in that separate lawsuit.   His conclusory assertions that the Texas Bureau of Pardons and Paroles has "a governing interest in the policies that effect [sic] the Windham School District since their policies effect [sic] their own policies and parole decisions" lacks merit.   Plaintiff has failed to allege any facts showing any of the Texas Board of Pardons and Paroles official named as defendants in this lawsuit has ever had any personal

involvement in, or personal knowledge of, the policies, practices, and procedures of the Windham School.

Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under Section 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d at 169 ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."). Generally, a supervisor may be held liable only if there exists either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). A supervisor may be held personally liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation. *See Porter v. Epps*, 659 F.3d at 446 ("A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"); *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010) (noting that supervisor may be held liable under Section 1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or supervise, (2) a causal link exists between the failure and violation of plaintiff's rights, and (3) the failure to train

or supervise amounts to deliberate indifference), *cert. denied*, 131 S. Ct. 2932 (2011).  Merely

negligent or incompetent supervision cannot form a basis for liability under Section 1983; the

supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a
> municipal actor disregarded a known or obvious consequence of his action." *Connick
> v. Thompson,* — U.S. ——, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal
> quotation marks omitted, alteration in original) (quoting *Bd. of Cnty. Comm'rs v.
> Brown,* 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).  To establish
> that a state actor disregarded a known or obvious consequence of his actions, there
> must be "actual or constructive notice" "that a particular omission in their training
> program causes...employees to violate citizens' constitutional rights" and the actor
> nevertheless "choose[s] to retain that program." *Id.* (citing *Bryan Cnty.,* 520 U.S. at
> 407, 117 S. Ct. 1382).  "A pattern of similar constitutional violations by untrained
> employees is ordinarily necessary to demonstrate deliberate indifference," because
> "[w]ithout notice that a course of training is deficient in a particular respect,
> decisionmakers can hardly be said to have deliberately chosen a training program that
> will cause violations of constitutional rights." *Id.*

*Porter v. Epps*, 659 F.3d at 446-47.  In this case, plaintiff has alleged no specific facts showing any

of the Texas Board of Pardons and Paroles officials named as defendants had any personal

involvement in, or personal knowledge of, any of the alleged denials of educational opportunity

about which plaintiff complains in this 42 U.S.C. § 1983 lawsuit.

Motion fort Appointment of Counsel

There is no right to the automatic appointment of counsel in civil cases.  *McFaul v.

Valenzuela*, 684 F.3d 564, 581 (5th Cir. 2012); *Castro Romero v. Becken*, 256 F.3d 349, 353-54 (5th

Cir. 2001); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1983).  While § 1915(e)(1) authorizes

a federal court to request an attorney to represent an indigent litigant in a federal civil rights case,

indigent litigants generally possess no constitutional or statutory right to appointed counsel.

*Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir.), *cert. denied*, 552 U.S. 1062 (2007); *Castro*

19

*Romero v. Becken*, 256 F.3d at 353-54; *Salmon v. Corpus Christi ISD*, 911 F.2d 1165, 1166 (5th Cir. 1990); *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989); *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987); *Jackson v. Dallas Police Department*, 811 F.2d 260, 261 (5th Cir. 1986); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).

A trial court is not required to appoint counsel for an indigent party in a civil rights lawsuit unless the case presents truly exceptional circumstances.  *McFaul v. Valenzuela*, 684 F.3d at 581; *Williams v. Ballard*, 466 F.3d 330, 335 (5th Cir. 2006);  *Ulmer v. Chancellor*, 691 F.2d at 212. Although no comprehensive definition of "exceptional circumstances" is practical, the existence of such circumstances will necessarily turn on two basic considerations:  (1) the type and complexity of the case; and (2) the abilities of the individual bringing it.  *Cupit v. Jones*, 835 F.2d at 86; *Jackson v. Dallas Police Department*, 811 F.2d at 261; *Branch v. Cole*, 686 F.2d at 266.  The United States Court of Appeals for the Fifth Circuit has repeatedly urged district courts to consider the following factors in ruling on an indigent plaintiff's request for appointment of counsel under Title 28 U.S.C. Section 1915(e): (1) the type and complexity of the case; (2) whether the indigent plaintiff is capable of presenting his or her case adequately;  (3)  whether the indigent plaintiff is in a position to adequately investigate the case; and (4) whether the evidence would likely consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *Baranowski v. Hart*, 486 F.3d at 126; *Castro Romero v. Becken*, 256 F.3d at 354; *Norton v. Dimazana*, 122 F.3d 286, 293 (5th Cir. 1997); *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992); *Murphy v. Keller*, 950 F.2d 290, 293 n.14 (5th Cir. 1992); *Ulmer v. Chancellor*, 691 F.2d at 213.  The United States Court of Appeals for the Fifth Circuit has strongly encouraged appointment of counsel when an indigent plaintiff's civil rights claims withstand scrutiny under 28 U.S.C. §

1915(e)(2) and the second and third of the foregoing factors weigh in favor of the appointment of counsel. *Parker v. Carpenter*, 978 F.2d at 193; *Murphy v. Keller*, 950 F.2d at 293.  In addition, the United States Court of Appeals for the Fifth Circuit has directed trial courts to consider whether the appointment of counsel would be of service not only to the plaintiff, but also possibly to the court and the defendant, through sharpening of issues, the shaping of the examination and cross-examination of witnesses, and, thus, the shortening of trial and assisting in a just determination. *Ulmer v. Chancellor*, 691 F.2d at 213.  It is also appropriate for the Court to consider whether the indigent plaintiff has demonstrated an inability to secure the assistance of private counsel, especially in view of the opportunity for a prevailing § 1983 plaintiff to recover attorney's fees.  *Jackson v. Cain*, 864 F.2d at 1242.

Plaintiff challenges the alleged refusal of state parole officials to treat him similarly to other TDCJ inmates who do not have an ICE detainer lodged against them.  Thus, the issues in this case appear to be purely legal in nature, *i.e.,* whether the detainer lodged against plaintiff justifies disparate treatment for plaintiff in terms of parole eligibility and eligibility to participate in TDCJ educational programs, and do not involve complex factual determinations.

In sum, plaintiff has failed to allege any facts showing he can overcome the defense from suit afforded defendants by the doctrine of qualified immunity.  Under such circumstances, plaintiff has failed to establish this his claims involve exceptional circumstances warranting appointment of counsel in this cause.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (ECF no. 9) is GRANTED such that all of plaintiff's claims are DISMISSED WITH PREJUDICE for failure to state a cause of action in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that plaintiff's motion for appointment of counsel (ECF no. 13) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for discovery (ECF no. 14) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for continuance (ECF no. 15) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court shall send a copy of this Memorandum Opinion and Order and the Final Judgment in this case to the Pro Se Staff Attorney, Attn.: Keeper of the "Three Strikes List," U.S. District Court for the Eastern District of Texas for the Tyler Division, 211 West Ferguson, Tyler, Texas 75702, so this case may be recorded in the "Three-Strikes List."

IT IS FINALLY ORDERED that motions pending with the Court, if any, are Dismissed as Moot and this case is CLOSED.

It is so ORDERED.

SIGNED this 12 day of April, 2016.


FRED BIERY
UNITED STATES DISTRICT JUDGE